IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 09-744-09 |
| MAODO KANE | : | |

### GOVERNMENT'S CHANGE OF PLEA MEMORANDUM

**I.     INTRODUCTION**

On November 24, 2009, a grand jury returned an indictment charging defendant Maodo Kane with two counts: (1) one count of conspiracy to traffic in counterfeit goods, in violation of 18 U.S.C. § 371, and (2) one count of trafficking in counterfeit goods, and aiding and abetting the same, in violation of 18 U.S.C. §§ 2314, 21, and 2.  The defendant has stated that he wishes to plead guilty to the indictment, and his plea hearing is presently being scheduled by the Court.

**II.    SUMMARY OF PLEA AGREEMENT**

The defendant has signed a plea agreement.  An unsigned version of the agreement is attached to this memorandum.  The parties will provide a signed, original version of this plea agreement during the change-of-plea hearing.

*Guideline Stipulations*

Pursuant to U.S.S.G. § 6B1.4, the parties enter into the following stipulations under the Sentencing Guidelines Manual effective November 1, 2009:

a. The parties agree and stipulate that, pursuant to U.S.S.G. § 2B1.1(a)(1), the base offense level is 6.

b. The parties agree and stipulate that the reasonably foreseeable fraud loss caused and intended by the defendant in furtherance of the criminal activity jointly undertaken by the defendant and his co-conspirators was more than $200,000 but less than $400,000; this amount was within the scope of the defendant's agreement; this amount was reasonably foreseeable to the defendant in connection with the scheme; and the defendant's guideline range should be calculated based on this amount pursuant to U.S.S.G. § 1B1.3, which results in a 12-level increase in the base offense level, pursuant to U.S.S.G. § 2B1.1(b)(1)(G).

c. The parties agree and stipulate that, as of the date of this agreement, the defendant has demonstrated acceptance of responsibility for his offense making the defendant eligible for a 2-level downward adjustment under Guideline Section 3E1.1(a).

d. The government and the defendant agree and stipulate that, as of the date of this agreement, the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, resulting in a 1-level downward adjustment under U.S.S.G. § 3E1.1(b).

*Appellate Waiver*

In exchange for the undertakings made by the government in entering the plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. This waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived.

    a.    Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

    b.    If the government does not appeal, then notwithstanding the waiver provision set forth in the paragraph above, the defendant may file a direct appeal but may raise only claims that:

        (1)    the defendant's sentence on any count of conviction exceeds the statutory maximum for that count;

        (2)    the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines; and/or

        (3)    the sentencing judge, exercising the Court's discretion pursuant to <u>United States v. Booker</u>, 520 U.S. 220 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court.

*Forfeiture*

The defendant agrees to not contest forfeiture pursuant to 18 U.S.C. § 982, all arising from his participation in a scheme with others to traffic in counterfeit goods.

*No Additional Promises*

The parties also agree and understand that the parties' guilty plea agreement contains no additional promises, agreements or understandings other than those set forth in this written guilty plea agreement, and that no additional promises, agreements or understandings will be entered into unless in writing and signed by all parties.

### III. ELEMENTS OF THE OFFENSES

#### A. CONSPIRACY (Count 20)

To prove a violation of Title 18, United States Code, Section 371 (conspiracy), the government must prove the following elements beyond a reasonable doubt:

1. that the defendant conspired with at least one other person to commit an unlawful act, in this case, to traffic in counterfeit goods;
2. that the defendant did so knowingly and willfully; and
3. that an overt act was knowingly committed in furtherance of the conspiracy.

#### B. TRAFFICKING IN COUNTERFEIT GOODS (Count 25)

To prove a violation of Title 18, United States Code, Section 2320 (trafficking in counterfeit goods), the government must prove the following elements beyond a reasonable doubt:

1. The defendant intentionally;

    2.      trafficked or attempted to traffic;

    3.      in goods or services; and

    4.      knowingly used a counterfeit mark on or in connection with such goods or services.

**IV.**    **STATUTORY MAXIMUM SENTENCE**

The defendant understands, agrees, and has had explained to him by counsel that the Court may impose the following statutory maximum sentence for the Counts charged: <u>Count Twenty</u> (conspiracy) — 5 years imprisonment, a $250,000 fine, three years supervised release, $100 mandatory special assessment; and <u>Count Twenty-Five</u> (transportation of stolen property) — 10 years imprisonment, a $250,000 fine, three years supervised release, $100 mandatory special assessment.

Thus, the **total maximum sentence** is 15 years imprisonment, 3 years supervised release, a $500,000 fine, and a $200 mandatory special assessment.

The defendant further understands that supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by 2 years in the case of Class C felonies. Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

## V.     FACTUAL BASIS FOR THE PLEA

At a trial, the government would have proven that the defendant committed the charged crimes by witness testimony and the presentation of evidence which supports the following recitation of facts:

Between in or about January 2008 and in or about November 2009, co-defendant MOUSSA ALI HAMDAN and several associates purchased counterfeit goods from a cooperating witness (the "CW").  Specifically, on or about July 24, 2008, defendant MAODO KANE traveled in two cars with co-defendants MOUSSA ALI HAMDAN, ALAA ALLIA AHMED MOHAMED, a/k/a "Alaa Ahmed Mohamed Abouelnagaa," and MICHAEL KATZ to pick up counterfeit goods (a total of approximately 1,572 pairs of Nike® shoes and approximately 334 Mitchell & Ness® sports jerseys from the CW's Philadelphia storage facility.  While the defendants were loading the goods into a van, the CW reiterated to defendant MOHAMED that the goods were counterfeit; defendant MOHAMED responded that he knew this, and that he even knew that it was a federal crime in which "the hit is 25 years!"  Partial payment was made to the CW on or about July 24, 2008, by defendant HAMDAN producing approximately $1,500 cash from his pocket and obtaining another approximately $1,000 in cash from defendant MOHAMED.  Defendant HAMDAN noted in conversation with the CW that defendant MOHAMED worked for defendant HAMDAN and would sell these shoes at flea markets.

The defendants could not fit all of the counterfeit goods into their two vans on or about July 24, 2008.  Consequently, defendants HAMDAN, KANE, and KATZ returned to the CW's Philadelphia storage facility on or about July 28, 2008, to take possession of the remainder of the shoes and sports jerseys that they were unable to take on July 24th.  Defendant HAMDAN provided

the CHS with another $1,000 in cash in partial payment. As defendants KANE and KATZ were loading the counterfeit goods into vans, the CW advised them to hurry in order to avoid being "exposed" loading the vans.

Following his arrest, the defendant confessed his crimes to the arresting agents. In particular, defendant KANE admitted that he knew the shoes and jerseys to be counterfeit when he participated in the July 2008 transactions, and he knew that the counterfeit goods would be sold at flea markets.

The retail value of the goods involved in the charged transactions was approximately $246,200.

Respectfully submitted,

MICHAEL L. LEVY
United States Attorney


\_\_/s/_____
NANCY BEAM WINTER/STEPHEN A. MILLER
Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Change of Plea Memorandum has been served by me, this date, by electronic mail upon the following individual:

>Michael J. Engle, Esq.
>Trigiani & Engle, LLP
>123 S. Broad Street, Suite 1812
>Philadelphia, PA 19109

>/s/
>STEPHEN A. MILLER
>Assistant United States Attorney

DATE:   January 25, 2010